UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BLUE RIDGE INVESTMENTS, LLC,

                            Petitioner,

            -against-

THE REPUBLIC OF ARGENTINA,

                            Respondent.

**MEMORANDUM
OPINION & ORDER**

10 Civ. 153 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

On January 8, 2010, Petitioner Blue Ridge Investments, L.L.C. ("Blue Ridge")

filed the instant petition to confirm an arbitral award rendered pursuant to the Convention on the

Settlement of Investment Disputes between States and Nationals of Other States (the "ICSID

Convention" or the "Convention").  On June 22, 2011, Respondent Republic of Argentina

("Argentina") moved, pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), and (6), to

dismiss the petition for lack of subject matter and personal jurisdiction under the Foreign

Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1604-1607 (2006), and for failure to state a

claim upon which relief can be granted.  For the reasons stated below, Respondent's motion to

dismiss will be DENIED.

## BACKGROUND

On July 26, 2001, CMS Gas Transmission Company ("CMS") filed an arbitration

claim against Argentina[1] with the International Centre for the Settlement of Investment Disputes

---

[1]  The dispute between Argentina and CMS concerned Argentina's suspension of a tariff
adjustment formula for gas transportation.  Argentina's action injured an enterprise in which
CMS had an investment.  (Pet. ¶ 6)

(the "ICSID").[2] (Pet. ¶ 6)  The dispute was arbitrated before an ICSID tribunal, and on May 12, 2005, the ICSID tribunal issued a final award in CMS's favor in the amount of $133.2 million (the "Award").  (Id. ¶ 7)  "The tribunal found that Argentina [had] breached its obligations to CMS, as a U.S.-protected investor in Argentina, under the bilateral investment treaty between the U.S. and Argentina and the ICSID Convention."  (Id.)

On September 8, 2005, Argentina filed an application with the Secretary-General of ICSID seeking annulment of the Award.  (Id. ¶ 8)  On September 25, 2005, the ICSID Annulment Committee "confirmed Argentina's obligation to pay CMS $133.2 million plus interest in compensation, holding that 'payment by Argentina of the sum awarded is . . . obligatory.'"  (Id.)  Argentina has not paid any portion of the award.  (Id. ¶¶ 12-13)

Blue Ridge, a Delaware corporation, is the purchaser and assignee of the Award.  (Id. ¶ 4)  On June 5, 2008, Blue Ridge notified Argentina that it was the successor-in-interest to CMS because of the purchase and assignment.  (Id. ¶ 1)

## DISCUSSION

Defendant moves to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, and under

---

[2]  The ICSID was established by the ICSID Convention.  The Convention "entered into force on October 14, 1966, when it had been ratified by 20 countries."  ICSID Convention, Regulations and Rules, Int'l Ctr. for the Settlement of Inv. Disputes 5 (2006), available at http://icsid.worldbank.org/ICSID/StaticFiles/basicdoc/CRR_English-final.pdf.  The purpose of ICSID is "to provide facilities for conciliation and arbitration of investment disputes between Contracting States and nationals of other Contracting States in accordance with the provisions of [the] Convention."  ICSID Convention, Art. 1(2).  The jurisdiction of ICSID "extend[s] to any legal dispute arising directly out of an investment, between a Contracting State (or any constituent subdivision or agency of a Contracting State designated to the Centre by that State) and a national of another Contracting State, which the parties to the dispute consent in writing to submit to the Centre."  ICSID Convention, Art. 25(1).

Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.[3]  A claim is "properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).

"In the context of a Rule 12(b)(1) challenge to jurisdiction under the FSIA, . . . the district court 'must look at the substance of the allegations' to determine whether one of the exceptions to the FSIA's general exclusion of jurisdiction over foreign sovereigns applies." Robinson v. Gov't of Malaysia, 269 F.3d 133, 140 (2d Cir. 2001) (quoting Cargill Int'l S.A. v. M/T Pavel Dybenko, 991 F.2d 1012, 1019 (2d Cir. 1993)).  The Second Circuit has described the parties' evidentiary burdens as follows:  "The defendant must first 'present[ ] a prima facie case that it is a foreign sovereign.'"  Id. at 141 n.7 (quoting Cargill Int'l, 991 F.2d at 1016).  The plaintiff then "'has the burden of going forward with evidence showing that, under exceptions set forth in the FSIA, immunity should not be granted, although the ultimate burden of persuasion remains with the alleged foreign sovereign.'"  Id. at 141 (quoting Cargill Int'l, 991 F.2d at 1016).

> In other words, in assessing whether a plaintiff has sufficiently alleged or proffered evidence to support jurisdiction under the FSIA, a district court must review the allegations in the complaint, the undisputed facts, if any, placed before it by the parties, and – if the plaintiff comes forward with sufficient evidence to carry its burden of production on this issue – resolve disputed issues of fact, with the defendant foreign sovereign shouldering the burden of persuasion.

Id.[4]

---

[3]  As discussed below, Argentina's motion under Rule 12(b)(2) turns on whether the Court has subject matter jurisdiction.  (See Resp. Br. 10)

[4]  Argentina argues that the Petition is facially insufficient in that it does not identify which exception to immunity under the FSIA is applicable.  (Resp. Br. 9-10)  In alleging that this Court has jurisdiction under 28 U.S.C. § 1330 (see Pet. ¶ 2), however, Blue Ridge has explicitly invoked the FSIA and the exceptions to immunity set forth in the FSIA.  See Foreign Sovereign Immunities Act of 1976, Pub. L. No. 94-583, 90 Stat. 2891 (codifying 28 U.S.C. § 1330).  Section 1330(a) provides that

A Rule 12(b)(6) motion challenges the legal sufficiency of pleaded claims.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  To meet this standard, a complaint's factual allegations must permit the Court, "draw[ing] on its judicial experience and common sense," "to infer more than the mere possibility of misconduct."  <u>Id.</u> at 679.  "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," <u>Kassner v. 2nd Ave. Delicatessen Inc.</u>, 496 F.3d 229, 237 (2d Cir. 2007) (citing <u>Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals</u>, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff."  <u>Id.</u> (citing <u>Fernandez v. Chertoff</u>, 471 F.3d 45, 51 (2d Cir. 2006)).  For purposes of a motion to dismiss, the "complaint is

---

district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state . . . as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605-1607 of this title or under any applicable international agreement.

28 U.S.C. § 1330(a).  Respondent has not cited law demonstrating that more is required as a matter of pleading.  In any event, courts in this District have considered <u>sua</u> <u>sponte</u> whether jurisdiction exists under a Section 1605 exception to immunity.  <u>See</u>, <u>e.g.</u>, <u>U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.</u>, 16 F. Supp. 2d 326, 333 n.7, <u>withdrawn</u> <u>in</u> <u>part</u> <u>on</u> <u>other</u> <u>grounds</u>, <u>modified</u> <u>in</u> <u>part</u> <u>by</u> 182 F.R.D. 97 (S.D.N.Y. 1998) ("Although [petitioner] has not raised § 1605(a)(6)(B) as a basis for subject matter jurisdiction, the Court may consider it <u>sua</u> <u>sponte</u>."); <u>Gabay v. Mostazafan Found. of Iran</u>, 151 F.R.D. 250, 255 n.8 (S.D.N.Y. 1993) ("Plaintiff suggests for the first time in his Reply Memorandum that jurisdiction is proper under 28 U.S.C. § 1605(a)(2), the 'commercial activity' exception.  Although neither plaintiff nor defendants brief this issue, the Court is entitled to address it <u>sua</u> <u>sponte</u>." (citing <u>Verlinden B.V. v. Central Bank of Nigeria</u>, 461 U.S. 480, 493 n.20 (1983)).

Here, in correspondence to the Court, and in its briefing, Petitioner has made clear that it is relying on 28 U.S.C. § 1605(a)(1) and (6).  (<u>See</u> Feb. 22, 2011 Petr. Ltr.; Petr. Opp. Br. 6-10)  The Court concludes that the "substance of the allegations" contained in the Petition support the applicability of Section 1605(a)(1) and (6) of the FSIA, and will address Petitioner's arguments on the merits.  <u>Cargill Int'l</u>, 991 F.2d at 1019.

deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference," and the court may consider any document "which is integral to the complaint." Int'l Audiotext Network, Inc. v. Am. Tel. and Telegraph Co., 62 F.3d 69, 72 (2d Cir. 1995).

## I.     THE COURT HAS SUBJECT MATTER JURISDICTION

The Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602, et seq., is "the sole basis for obtaining jurisdiction over a foreign state" in United States courts. Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 443 (1989). The FSIA provides that a "foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter." 28 U.S.C. § 1604. Accordingly, pursuant to the FSIA, "a foreign state is presumptively immune from the jurisdiction of United States courts. . . ." Saudi Arabia v. Nelson, 507 U.S. 349, 355 (1993). However, "[t]hat presumption can be overcome if a plaintiff shows that one of the exceptions to immunity under 28 U.S.C. §§ 1605-1607 applies." Funnekotter v. Republic of Zimbabwe, No. 09 Civ. 8168(CM), 2011 WL 666227, at *2 (S.D.N.Y. Feb. 10, 2011).

Blue Ridge argues that two exceptions to sovereign immunity apply here: (1) the exception for explicit or implicit waivers of immunity under 28 U.S.C. § 1605(a)(1); and (2) the exception for confirmation of arbitral awards under 28 U.S.C. § 1605(a)(6). (Petr. Opp. Br. 6) Argentina argues that it has not waived sovereign immunity, stating that (1) "[c]onsenting to arbitrate before an ICSID tribunal hardly constitutes proof of a foreign state's intent to waive immunity to suit in United States courts" under Section 1605(a)(1); and (2) there was no waiver under Section 1605(a)(6) because "Argentina did not make an agreement to arbitrate 'with' . . . [or] 'for the benefit of' Petitioner." (Resp. Br. 11; Resp. Reply Br. 2)

**A.**     **Implied Waiver Exception**

Under Section 1605(a)(1),

[a] foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . in which the foreign state has waived its immunity either explicitly or by implication. . . .

28 U.S.C. § 1605(a)(1).

The Second Circuit has cautioned that "the implied waiver provision of Section 1605(a)(1) must be construed narrowly," Shapiro v. Republic of Bolivia, 930 F.2d 1013, 1017 (2d Cir. 1999), and "courts have been reluctant to find an implied waiver where the circumstances were not . . . unambiguous." Id. Implied waiver is commonly found in cases involving the enforcement of arbitration awards, however, so long as the award is rendered pursuant to a convention to which the foreign state is a signatory, and the convention provides for recognition and enforcement of the award in contracting states. See, e.g., Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co. v. Navimpex Centrala Navala, 989 F.2d 572, 578-79 (2d Cir. 1993); Liberian E. Timber Corp. v. Gov't of the Republic of Liberia ("LETCO"), 650 F. Supp. 73, 76 (S.D.N.Y. 1986); M.B.L. Int'l Contractors, Inc. v. Republic of Trinidad & Tobago, 725 F. Supp. 52, 55-56 (D.D.C. 1989).

In Seetransport, the Second Circuit found an implied waiver where a foreign state was a signatory to the Convention on the Recognition and Enforcement of Arbitral Awards, holding that "when a country becomes a signatory to the Convention, by the very provisions of the Convention, the signatory State must have contemplated enforcement actions in other signatory States." Seetransport, 989 F.2d at 578. Similarly, in LETCO, Judge Weinfeld found that "Liberia, as a signatory to the [ICSID] Convention, waived its sovereign immunity in the United States with respect to the enforcement of any arbitration award entered pursuant to the

6

Convention." <u>LETCO</u>, 650 F. Supp. at 76.  Judge Weinfeld reasoned that "Liberia clearly

contemplated the involvement of the courts of any of the Contracting States, including the

United States as a signatory to the Convention, in enforcing the pecuniary obligations of the

award." <u>Id.</u>

   Here, Argentina and the United States are both Contracting States to the ICSID

Convention.[5]  Pursuant to Article 54 of the Convention, "[e]ach Contracting State shall

recognize an award rendered pursuant to th[e] Convention as binding and enforce the pecuniary

obligations imposed by that award within its territories as if it were a final judgment of a court in

that State." <u>ICSID Convention, Regulations and Rules</u>, Int'l Ctr. for the Settlement of Inv.

Disputes (2006), <u>available</u> at

http://icsid.worldbank.org/ICSID/StaticFiles/basicdoc/CRR_English-final.pdf.  Moreover, the

United States has enacted legislation implementing this provision.  <u>See</u> 22 U.S.C. § 1650a(a)

("An award of an arbitral tribunal rendered pursuant to chapter IV of the [ICSID Convention]

shall create a right arising under a treaty of the United States.  The pecuniary obligations

imposed by such an award shall be enforced and shall be given the same full faith and credit as if

the award were a final judgment of a court of general jurisdiction of one of the several States.").

Given its status as a Contracting State to the Convention, as well as its participation in the ICSID

arbitration, Argentina "must have contemplated enforcement actions in other signatory States,"

<u>Seetransport</u>, 989 F.2d at 578, "including the United States as a signatory to the Convention."

<u>LETCO</u>, 650 F. Supp. at 76.

---

[5]  According to the International Centre for the Settlement of Investment Disputes, Argentina has
been a signatory to the ICSID Convention since May 21, 1991, and its membership has been
effective since November 18, 1994.  <u>See</u> <u>List of Contracting States and Other Signatories to the
Convention</u>, Int'l Ctr. for the Settlement of Inv. Disputes, (as of July 25, 2012), <u>available</u> <u>at</u>
http://icsid.worldbank.org/ICSID/FrontServlet?requestType=ICSIDDocRH&actionVal=ShowDo
cument&language=English.

Argentina's reliance on <u>Argentine Republic v. Amerada Hess Shipping Corp.</u>, 488 U.S. 428 (1989) and <u>Mar. Int'l Nominees Establishment v. Republic of Guinea</u> ("<u>MINE</u>"), 693 F.2d 1094 (D.C. Cir. 1982) is misplaced.  In <u>Amerada Hess</u>, the Supreme Court held that a foreign state does not waive its immunity "by signing an international agreement that contains no mention of a waiver of immunity to suit in United States courts or even the availability of a cause of action in the United States."  <u>Amerada Hess</u>, 488 U.S. at 442-43.  However, where, as here, a foreign state has chosen to become a Contracting State for purposes of the ICSID Convention – which provides for the automatic recognition and enforcement of awards in Contracting States – that foreign state clearly anticipates "the availability of a cause of action in the United States," at least with respect to the recognition and enforcement of an award.  <u>Id.</u>

<u>MINE</u> sheds no light on the issues here, because that case involved a proceeding to confirm an American Arbitration Association ("AAA") award, not a proceeding to enforce an award under ICSID.  <u>See</u> <u>MINE</u>, 693 F.2d at 1103 n.14 ("We need not decide whether Guinea's signing of the ICSID treaty would thus waive its immunity from proceedings enforcing ICSID awards, for this is a proceeding to confirm an AAA arbitration.").[6]

The Court concludes that the implied waiver provision set forth in 28 U.S.C. § 1605(a)(1) is applicable.  As a Contracting State to the ICSID Convention, Argentina has waived its sovereign immunity with respect to the recognition and enforcement of arbitral awards issued under the ICSID Convention.

---

[6]  <u>MINE</u> is also distinguishable in that there was no final ICSID award in that case.  <u>See</u> <u>MINE</u>, 693 F.2d at 1103 (noting that "the State Department [had] urged th[e] court to find that agreements to arbitrate with ICSID do not contemplate the involvement of domestic courts, <u>at least not before a final ICSID decision is to be enforced</u>") (emphasis added).  Unlike the instant case – which involves a final award under ICSID – <u>MINE</u> presented the issue of whether the ICSID Convention "contemplate[s] a role for United States courts in compelling arbitration that stalled along the way."  <u>Id.</u>

### B.     Arbitral Award Exception

Blue Ridge contends that Argentina also waived sovereign immunity under 28

U.S.C. § 1605(a)(6), which provides that

> [a] foreign state shall not be immune from the jurisdiction of courts of the United
> States or of the States in any case . . . in which the action is brought . . . to confirm
> an award made pursuant to . . . an agreement to arbitrate, if . . . the agreement or
> award is or may be governed by a treaty or other international agreement in force
> for the United States calling for the recognition and enforcement of arbitral
> awards.

28 U.S.C. § 1605(a)(6).  As the Second Circuit has explained, Section 1605(a)(6) "provides an

exception to sovereign immunity in cases where a foreign state has agreed to arbitrate and the

arbitration agreement is or may be governed by a treaty signed by the United States calling for

the recognition and enforcement of arbitral awards."  Cargill Int'l, 991 F.2d at 1017.

"[T]he immunity exception in Section 1605(a)(6)(B) applies [where the foreign

state at issue is a] signator[y] to [ICSID] and Petitioner['s] arbitration award was obtained

pursuant to that treaty."  Funnekotter, 2011 WL 666227, at *2 (holding that Section

1605(a)(6)(B) immunity exception applied where the Netherlands, Zimbabwe, and the United

States were all signatories to ICSID and the arbitration award was obtained pursuant to ICSID).

Here, Blue Ridge instituted the instant action "to confirm an award made pursuant

to [Argentina's] agreement to arbitrate."  28 U.S.C. § 1605(a)(6).  The Award is governed by the

the ICSID Convention, "a treaty or other international agreement in force for the United States

calling for the recognition and enforcement of arbitral awards."  28 U.S.C. § 1605(a)(6)(B); see

also 22 U.S.C. § 1650a(a) ("An award of an arbitral tribunal rendered pursuant to chapter IV of

the [ICSID Convention] shall create a right arising under a treaty of the United States.  The

pecuniary obligations imposed by such an award shall be enforced and shall be given the same

full faith and credit as if the award were a final judgment of a court of general jurisdiction of one

of the several States."). Argentina and the United States are both signatories to the Convention. Accordingly, Argentina's agreement to submit its dispute with CMS to arbitration governed by the ICSID Convention constituted a waiver of immunity under Section 1605(a)(6)(B) with respect to recognition and enforcement of the Award.[7]

Accordingly, this Court has subject matter jurisdiction under both Section 1605(a)(1) and Section 1605(a)(6).

## II.     THE COURT HAS PERSONAL JURISDICTION OVER ARGENTINA

Under the FSIA, personal jurisdiction exists "as to every claim for relief over which the district courts have jurisdiction under [28 U.S.C. § 1330(a)] where service has been made under section 1608 . . . ."  28 U.S.C. § 1330(b); see Capital Ventures Int'l v. Republic of Argentina, 552 F.3d 289, 293 n.3 (2d Cir. 2009)  ("Congress has provided that personal jurisdiction over a foreign state exists when the FSIA permits a suit against that state and the service of process requirements set forth in 28 U.S.C. § 1608 have been satisfied.")[8]  Argentina does not argue that service has been improper; it merely contends (Resp. Br. 10) that personal jurisdiction does not exist because this Court lacks subject matter jurisdiction.  See 28 U.S.C. § 1330(b) (permitting exercise of personal jurisdiction only where a court also possesses subject matter jurisdiction under 28 U.S.C. § 1330(a)).  Because this Court has subject matter

---

[7]  Argentina's argument that this exception does not apply because "Argentina did not make an agreement to arbitrate 'with' . . . [or] 'for the benefit of' Petitioner" is unpersuasive.  (Resp. Reply Br. 2).  Argentina contends that Petitioner, as an assignee, may not assert the Section 1605(a)(6) exception to immunity.  Nothing in the plain language of this provision suggests that an action "to confirm an award made pursuant to . . . an agreement to arbitrate" must be brought by the party that entered into the arbitration agreement with the foreign state.  Respondent has likewise cited no law in support of this argument.

[8]  It is not necessary to conduct a due process analysis concerning the exercise of personal jurisdiction over a foreign state.  See Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic, 582 F.3d 393, 400 (2d Cir. 2009) ("[F]oreign states are not 'persons' entitled to rights under the Due Process Clause. . . .").  Accordingly, personal jurisdiction may be exercised over a foreign state where the FSIA's requirements are satisfied.

jurisdiction under 28 U.S.C. §§ 1605(a)(1) and (6), and because there has been no challenge to service, this Court may exercise personal jurisdiction over Argentina.

## III.     PETITIONER HAS STATED A CLAIM

Argentina argues that the Petition should be dismissed under Rule 12(b)(6) because (1) as an assignee, Petitioner lacks authority to seek recognition and enforcement of the Award; (2) the Petition is barred by <u>res judicata</u> under Fed. R. Civ. P. 41(a); and (3) the Petition is time-barred under New York's one-year statute of limitations for lawsuits seeking confirmation of an arbitration award.

### A.     Assignee's Authority to Seek Confirmation of ICSID Award

### 1.     Law Applicable to Interpretation of Treaties and Conventions

"'The interpretation of a treaty, like the interpretation of a statute, begins with its text.'" <u>Abbott v. Abbott</u>, 130 S. Ct. 1983, 1990 (2010) (quoting <u>Medillin v. Texas</u>, 552 U.S. 491, 506 (2008)); <u>see also</u> <u>Swarna v. Al-Awadi</u>, 622 F.3d 123, 132 (2d Cir. 2010) ("In interpreting a treaty, it is well established that we 'begin[ ] with the text of the treaty and the context in which the written words are used.'") (quoting <u>Mora v. New York</u>, 524 F.3d 183, 194 (2d Cir. 2008)); <u>Foxworth v. Permanent Mission of Republic of Uganda to United Nations</u>, 796 F. Supp. 761, 763 (S.D.N.Y. 1992) ("Interpretation of a treaty begins with its text and the context in which the language is used.") (citations omitted).  "If the text of the treaty is clear and unambiguous, it is to be enforced according to its terms, without the need for extrinsic evidence."  <u>Bank of New York v. Yugoimport SDPR J.P.</u>, 780 F. Supp. 2d 344, 360 (S.D.N.Y. 2011) (citing <u>Jones v. Bill</u>, 10 N.Y.3d 550, 555 (2008)); <u>see also</u> <u>Brink's Ltd. v. South African Airways</u>, 93 F.3d 1022, 1027 (2d Cir. 1996) ("If the language is 'reasonably susceptible of only one interpretation,' our task of

interpretation ends there.") (quoting <u>Buonocore v. Trans World Airlines, Inc.</u>, 900 F.2d 8, 9-10 (2d Cir. 1990)).

"Although the Court may not engage in interpretation of treaty language that is clear on its face, it may employ traditional methods of interpretation to discern the meaning of ambiguous terms." <u>Am. Home Assurance Co. v. Jacky Maeder (Hong Kong) Ltd.</u>, 969 F. Supp. 184, 190 n.4 (S.D.N.Y. 1997) (citing <u>Chan v. Korean Air Lines, Ltd.</u>, 490 U.S. 122, 134 (1989)). "General rules of statutory construction 'may be brought to bear on difficult or ambiguous passages,' but [courts] also 'look beyond the written words to the history of the treaty, the negotiations, and the practical construction adopted by the [signatory] parties' in determining the meaning of a treaty provision." <u>Swarna</u>, 622 F.3d at 132 (citing <u>E. Airlines, Inc. v. Floyd</u>, 499 U.S. 530, 535 (1991)); <u>see also</u> <u>Medillin</u>, 552 U.S. at 507 ("Because a treaty ratified by the United States is 'an agreement among sovereign powers,' [a court may] also consider[ ] as 'aids to its interpretation' the negotiation and drafting history of the treaty as well as 'the post [-]ratification understanding' of signatory nations.") (quoting <u>Zicherman v. Korean Air Lines Co.</u>, 516 U.S. 217, 226 (1996)).

## 2.    **Article 54 of the ICSID Convention**

Article 54 is found in Chapter IV, Section 6, of the ICSID Convention.  Chapter IV is entitled "Arbitration," and Section 6 is entitled "Recognition and Enforcement of the Award."  Article 54 provides:

> (1)    Each Contracting State shall recognize an award rendered pursuant to this Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State.  A Contracting State with a federal constitution may enforce such an award in or through its federal courts and may provide that such courts shall treat the award as if it were a final judgment of the courts of a constituent state.

(2)    <u>A party</u> seeking recognition or enforcement in the territories of a Contracting State shall furnish to a competent court or other authority which such State shall have designated for this purpose a copy of the award certified by the Secretary-General.  Each Contracting State shall notify the Secretary-General of the designation of the competent court or other authority for this purpose and of any subsequent change in such designation.

(3)    Execution of the award shall be governed by the laws concerning the execution of judgments in force in the State in whose territories such execution is sought.

ICSID Convention, Art. 54 (emphasis added).

### 3.    <u>Analysis</u>

Argentina and Blue Ridge's dispute as to Article 54 turns on the meaning of "[a] party" as used in Article 54(2).  Argentina argues that "the term 'party,' <u>as used in Article 54(2) and throughout the ICSID Convention</u>, refers to the parties to the arbitration. . . . In light of <u>ICSID's consistent use</u> of 'party' to mean a party to the underlying arbitration . . . only a party to the underlying arbitration can seek recognition or enforcement of the award under Article 54(2); a transferee or assignee cannot."  (Resp. Br. 13) (emphasis added)  Because Blue Ridge is an assignee, Argentina argues that it has no right to seek confirmation of the Award.  (<u>Id.</u> at 12)

To begin, the term "party" is not defined in the ICSID Convention.  Moreover, when the Convention's use of the term "party" is analyzed, it becomes clear that this word has different meanings in different provisions, and does not invariably mean a "party to the arbitration."

For example, Article 64 of the Convention reads as follows:

[a]ny dispute arising between Contracting States concerning the interpretation or application of this Convention which is not settled by negotiation shall be referred to the International Court of Justice by the application of <u>any party to such dispute</u>, unless the States concerned agree to another method of settlement.

ICSID Convention, Art. 64 (emphasis added).  Read in context, "party" – as used in Article 64 – refers to a Contracting State.

Similarly, Article 67 of the Convention provides:

> [t]his Convention shall be open for signature on behalf of States members of the Bank [for Reconstruction and Development].  It shall also be open for signature on behalf of any other State which is a <u>party to the Statute of the International Court of Justice</u> and which the Administrative Council, by a vote of two-thirds of its members, shall have invited to sign the Convention.

ICSID Convention, Art. 67 (emphasis added).  Again, the term "party" in Article 67 does not refer to a "party to the arbitration," but rather refers to a State that is a "party to the Statute of the International Court of Justice."  In sum, Argentina's claim that "party" – as used in the Convention – invariably refers to a "party to the arbitration" is simply wrong.

Moreover, in numerous Articles that use the terms "party" or "parties," the drafters chose – unlike in Article 54(2) – to include language that restricts or defines the scope of these terms.  For example, in Article 25 – part of the Convention chapter addressing "Jurisdiction of the Centre" – the drafters refer to "the parties to the dispute," stating that "[t]he jurisdiction of the Centre shall extend to any legal dispute arising directly out of an investment, between a Contracting State . . . and a national of another Contracting state, which <u>the parties to the dispute</u> consent in writing to submit to the Centre."  ICSID Convention, Art. 25 (emphasis added).  Because of this qualifying language, it is clear that the remaining references in Article 25 to "the parties" refer to "the parties to the dispute."

Similarly, in Article 32 – part of the Convention chapter addressing "Conciliation" – the Convention provides that "[a]ny objection by <u>a party to the dispute</u> that that dispute is not within the jurisdiction of the Centre . . . shall be considered by the Commission which shall determine whether to deal with it as a preliminary question or to join it to the merits

of the dispute." ICSID Convention, Art. 32 (emphasis added).  In Article 35 – in this same chapter – the terms "party" and "parties" are again qualified:  "Except as the <u>parties to the</u> <u>dispute</u> shall otherwise agree, neither <u>party to a conciliation proceeding</u> shall be entitled in any other proceeding . . . to invoke or rely on any views expressed or statements or admissions or offers of settlement made by the other <u>party in the conciliation proceeding</u>. . . ." ICSID Convention, Art. 35 (emphasis added).  <u>See</u> <u>also</u> ICSID Convention, Art. 38 ("party to the dispute"), Art. 39 ("party to the dispute"), Art. 41 ("party to the dispute"), Art. 42 ("party to the dispute"), Art. 52 ("party to the dispute"), Art. 57 ("party to arbitration proceedings").

In those Articles in which "party" or "parties" is not qualified or restricted, it is generally abundantly clear from context how these terms should be construed.  For example, in Chapter IV, Section 3, of the Convention – entitled "Powers and Functions of the Tribunal" – there are references to "party to the dispute," but also references simply to "a party."  <u>Compare</u> ICSID Convention, Arts. 41, 42 <u>with</u> ICSID Convention, Art. 45.  In those instances in which "party" or "parties" is not qualified or restricted, it is clear from context that these terms refer to a party or parties to the arbitration.  For example, Article 43 provides:  "[e]xcept as <u>the parties</u> otherwise agree, the Tribunal may, if it deems it necessary at any stage of the proceedings, (a) call upon <u>the parties</u> to produce documents or other evidence, and (b) visit the scene connected with the dispute, and conduct such inquiries there as it may deem appropriate."  ICSID Convention, Art. 43 (emphasis added).  Read in context, it is clear that "the parties" refers to "a party to the arbitration," because this section addresses rules applicable to the arbitration proceeding.

The same cannot be said for the use of "a party" in Article 54, which is part of a section dealing with "Recognition and Enforcement of the Award," and perforce addresses events _after_ the arbitration proceeding is entirely complete and there has been a final award.

Use of the term "a party" – without any modifying language – is not common in the Convention.[9]  This phrase is used in Article 45, which – as noted above – is part of a section addressing the "powers and functions of the tribunal."  It is clear from context that "a party" – as used in Article 45 – refers to a party to the dispute:

> (1) Failure of _a party_ to appear or to present his case shall not be deemed an admission of the other party's assertions.
>
> (2) If _a party_ fails to appear or to present his case at any stage of the proceedings the other party may request the Tribunal to deal with the questions submitted to it and to render an award.  Before rendering an award, the Tribunal shall notify, and grant a period of grace to, the party failing to appear or to present its case, unless it is satisfied that that party does not intend to do so.

ICSID Convention, Art. 45 (emphasis added).

"A party" is also used in Article 46, which is part of the same section.  Again, it is clear in context that "a party" as used in Article 46 refers to a party to the arbitration:

> [e]xcept as the parties otherwise agree, the Tribunal shall, if requested by _a party_, determine any incidental or additional claims or counterclaims arising directly out of the subject-matter of the dispute provided that they are within the scope of the consent of the parties and are otherwise within the jurisdiction of the Centre.

ICSID Convention, Art. 46 (emphasis added); _see also_ ICSID Convention, Art. 49 ("The Tribunal upon the request of _a party_ made within 45 days after the date on which the award was

---

[9]  The terms "either party," "both parties," or "the parties," are used much more frequently.  _See, e.g._, ICSID Convention, Arts. 25-26, 28-29, 30, 33-39, 42-44, 46-47, 50-52.  In connection with these terms, modifying language or context generally makes their meaning clear.

rendered may after notice to the other party decide any question which it had omitted to decide in the award, and shall rectify any clerical, arithmetical or similar error in the award.").[10]

Again, the use of "a party" in Article 54(2) arises in a context in which a final award has been rendered, the parties are no longer before the arbitration panel, and "a party" is seeking to obtain "recognition or enforcement [of the award] in the territories of a Contracting State."  ICSID Convention, Art. 54(2).

"A basic canon of statutory interpretation, which is equally applicable to interpreting treaties, is to avoid readings that 'render statutory language surplusage' or 'redundant.'"  Sacirbey v. Guccione, 589 F.3d 52, 66 (2d Cir. 2009) (quoting Filler v. Hanvit Bank, 378 F.3d 213, 220 (2d Cir. 2004)).  The Court has demonstrated that "party" – as used in the ICSID Convention – does not always refer to a "party to the arbitration."  But if, as Argentina argues, "party" was intended to always mean a "party to the arbitration," then the modifying language repeatedly used throughout the Convention would constitute surplusage.  Moreover, had the drafters of the Convention intended to say in Article 54(2) that only a "party to the arbitration" or a "party to the dispute" could seek recognition and enforcement of an ICSID Convention award, they could have used this language, as was done in many other Convention provisions.

Considering the Convention as a whole, and how the terms "party" and "parties" are used, the decision not to modify or restrict the term "party" in Article 54(2) undermines Argentina's argument that "a party" must mean "a party to the arbitration."  The Court concludes that "a party" as used in Article 54(2) is ambiguous, because it is not "'reasonably susceptible of

---

[10]  The only other uses of "a party" in the Convention are in Articles 56 and 57, which deal with the appointment of conciliators or arbitrators.  Again, it is clear from context that "a party" refers to a party to the arbitration.

only one interpretation.'"  Brink's Ltd., 93 F.3d at 1027 (quoting Buonocore, 900 F.2d at 9-10);

see also Am. Home Assurance Co., 969 F. Supp. at 190 n.4 ("As 'carrier' is not defined in the

[Warsaw] Convention and is susceptible to a number of possible meanings, the Court concludes

that the term is ambiguous.")  "A party," as used in Article 54(2), could reasonably be

understood to mean a "party to the arbitration," or simply (and literally) an individual or entity

seeking to enforce an ICSID Convention award.[11]

       Moreover, when the Court considers – as it must – "the context in which the

written words are used," Swarna, 622 F.3d at 132, Article 54(2) appears to do no more than

describe the procedure that must be used by a party seeking recognition or enforcement of an

award.  See Compañia de Aguas del Aconquija SA and Vivendi Universal SA v. Argentina,

ICSID Case No. ARB/97/3, Decision on Request for a Continued Stay of Enforcement (Nov. 4,

2008) ("The second paragraph of Article 54 merely organizes the logistics of seeking the

recognition and enforcement, through the identification of a given judicial or other authority

whose function is merely administrative, in the sense of undertaking the operation of receiving

the copy of the award 'certified by the ICSID Secretary-General' as required under Article 49,

paragraph 1 of the ICSID Convention.") (emphasis in original).  Nothing in Article 54(2)

---

[11]  In "The ICSID Convention:  A Commentary," the treatise author opines that

    [o]nly a party to the original ICSID arbitration proceeding may initiate the procedure under
    Art. 54(2).  This would exclude action by an interested third party.  It would, in particular,
    exclude action by a State purporting to act on behalf of its constituent subdivision or agency
    . . . .  The requirement that only one of the original parties may initiate a proceeding for the
    recognition and enforcement of an award may also lead to problems of State succession or
    corporate succession. . . ."

Christoph H. Schreuer, The ICSID Convention:  A Commentary 1135-36 (2001).  The author
does not explain the basis for his opinion, however, and his work does not disclose a textual
analysis of the term "party" as used in the Convention.  Accordingly, the Court does not find the
author's opinion persuasive.

suggests that it was intended to communicate that only a "party to the arbitration" can seek enforcement of an ICSID Convention award, nor does any other provision in the Convention suggest such a restriction.  Any such intent could easily have been expressed.

Article 54(1) provides that Contracting States must "recognize an award rendered pursuant to [the ICSID] Convention as binding and enforce the pecuniary obligations imposed by that award . . . as if it were a final judgment of a court in that State."  The Convention thus directs courts in Contracting States to apply their own laws in enforcing ICSID awards.  Contrary to Argentina's contention, the Convention does not prescribe the manner in which ICSID awards must be enforced, other than requiring that the party seeking enforcement of the award must furnish a certified copy of the award to the designated court, and that awards be treated as "final judgments" of courts in the Contracting State.

In enacting legislation to implement the ICSID Convention, Congress tracked the language used in Article 54(1).  The implementing legislation provides that an ICSID Convention award's "pecuniary obligations . . . shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States."  22 U.S.C. § 1650a(a).  Nothing in the implementing legislation suggests that only a party to the ICSID arbitration can seek enforcement of an ICSID award.

Because an ICSID Convention award is entitled to "the same full faith and credit" as a final judgment of a state court, see 22 U.S.C. § 1650a(a), however, it is necessary to consider New York law concerning the enforceability of a judgment issued by a sister state's courts.  See Siag v. Arab Republic of Egypt, No. M-82, 2009 WL 1834562, at *2-3 (S.D.N.Y. June 19, 2009) ("In treating an ICSID arbitration award as I would the final judgment of a state court, the procedures of New York's CPLR are relevant. . . . I will adopt the procedures of

Article 54 of the CPLR to effectuate the entry of judgment for an award rendered under the ICSID Convention.")  Accordingly, the Court must determine whether a foreign judgment entitled to full faith and credit in the State of New York can properly be assigned to a third party, and whether that third party has authority to seek enforcement of that judgment.

Under New York General Obligations Law § 13-103, "[a] judgment for a sum of money, or directing the payment of a sum of money, recovered upon any cause of action, may be transferred."  N.Y. Gen. Oblig. L. § 13-103; see N.Y. Gen. Oblig. L. § 13-109 ("As used in sections 13-101, 13-103, 13-105 and 13-107, the term 'transfer' includes sale, assignment, conveyance, deed and gift.").  The Second Circuit has recognized that, "[u]nder this section[,] the assignment of a judgment operates as a transfer of the present right to the judgment. . . ." Law Research Serv., Inc. v. Martin Lutz Appellate Printers, Inc., 498 F.2d 836, 839 (2d Cir. 1974).  Given that the Award must be treated as "a final judgment of a court of general jurisdiction of one of the several States," 22 U.S.C. § 1650a(a), this Court has no difficulty in concluding that it is assignable under New York law.  See Jugometal v. Samincorp, Inc., 78 F.R.D. 504, 507 (S.D.N.Y. 1978) ("[a]n assignee has the same standing to enforce an arbitration award in this Court as its assignor would have").

In sum, the Court concludes that nothing in the ICSID Convention, in Congress's legislation implementing ICSID, or in New York law prevents an assignee from seeking recognition and enforcement of an ICSID Convention award.

**B.  <u>Petitioner's Claims Are Not Barred By Res Judicata</u>**

**1.  <u>Applicable Law</u>**

Argentina argues (Resp. Br. 15) that Blue Ridge's claims are barred by the doctrine of <u>res judicata</u>, which provides that "a final judgment on the merits of an action

20

precludes the parties or their privies from relitigating issues that were or could have been raised

in that action."  Allen v. McCurry, 449 U.S. 90, 94 (1980); see also Woods v. Dunlop Tire Corp.,

972 F.2d 36, 38 (2d Cir. 1992) (res judicata "'prevents a party from litigating any issue or

defense that could have been raised or decided in a previous suit, even if the issue or defense was

not actually raised or decided'") (quoting Clarke v. Frank, 960 F.2d 1146, 1150 (2d Cir. 1992)).

Whether a claim is precluded depends on "'whether the same transaction or

connected series of transactions is at issue, whether the same evidence is needed to support both

claims, and whether the facts essential to the second were present in the first.'"  Id. (quoting

N.L.R.B. v. United Techs. Corp., 706 F.2d 1254, 1260 (2d Cir. 1983)).  "Res judicata challenges

may properly be raised via a motion to dismiss for failure to state a claim under Rule 12(b)(6)."

Thompson v. Cnty. of Franklin, 15 F.3d 245, 253 (2d Cir. 1994) (citations omitted).

### 2.    Analysis

Blue Ridge and its predecessor in interest, CMS, filed two earlier lawsuits seeking

enforcement of the Award.[12]  In the first action, styled CMS Gas Transmission Co. v. The

---

[12]  While a court considering a motion to dismiss "'is generally limited to the facts and
allegations that are contained in the complaint and in any documents that are either incorporated
into the complaint by reference or attached to the complaint as exhibits . . . [a court] may also
look to public records . . . in deciding a motion to dismiss.'"  Simpson v. Melton-Simpson, 10
Civ. 6347(NRB), 2011 WL 4056915, at *2 (S.D.N.Y. Aug. 29, 2011) (quoting Blue Tree Hotels,
Inv. (Canada) Ltd. v. Starwood Hotels and Resorts, Worldwide, Inc., 369 F.3d 212, 217 (2d Cir.
2004)); see also Murphy v. Int'l Bus. Machs. Corp., No. 10 Civ. 6055(LAP), 2012 WL 566091,
at *2 n.1 (S.D.N.Y. Feb. 21, 2012) ("The Court takes judicial notice of the publicly available and
relevant filings and Orders in the [prior litigation] for the limited purposes of establishing the
'fact of such litigation and related filings,' and in order to determine 'the preclusive effect of
[the] prior judgment for res judicata purposes.'") (citations omitted); Chien v. Skystar Bio
Pharm. Co., 623 F. Supp. 2d 255, 260 n.3 (D. Conn. 2009) ("[I]n considering a res judicata
defense, a court may judicially notice prior pleadings, orders, judgments, and other items
appearing in the court records of prior litigation that are related to the case before the Court.").
Here, the Court will take judicial notice of the petition filed in CMS Gas Transmission Co. v.
The Republic of Argentina, No. 08 Civ. 3169(LAP) and the related notice of voluntary dismissal,

<u>Republic of Argentina</u>, No. 08 Civ. 3169(LAP) ("<u>CMS</u>") and filed on March 27, 2008, CMS

sought a judgment "[e]nforcing the Award" and "[a]warding CMS the sum of US$168,373,138,

plus interest. . . ."[13]  (No. 08 Civ. 3169(LAP), Dkt. No. 1, <u>ad damnum</u> clause)  On June 24, 2008,

CMS filed a notice of voluntary dismissal under Fed. R. Civ. P. 41(a)(1)(i).  (08 Civ. 3169(LAP),

Dkt. Nos. 11, 12)

       In the second action, <u>Blue Ridge Invs., L.L.C. v. The Republic of Argentina</u>, No.

09 Civ. 2377(GEL) ("<u>Blue Ridge I</u>"), which was filed on March 13, 2009, Blue Ridge sought a

judgment "[c]onfirming the . . . Award" and "[a]warding Blue Ridge, as successor in interest to

CMS, the sum of $133.2 million, plus interest. . . ."  (No. 09 Civ. 2377(GEL), Dkt. No. 1, <u>ad</u>

<u>damnum</u> clause)  On August 31, 2009, <u>Blue Ridge I</u> was dismissed by order of Judge Lynch (the

"Dismissal Order").  (09 Civ. 2377(GEL), Dkt. No. 3)

       The Dismissal Order states:

> The Court has been informed that the parties have reached a settlement in
> principle of this case.  Accordingly, it is hereby ORDERED that this action is
> dismissed without costs and without prejudice to restoring the action to the
> Court's calendar, provided the application to restore the action is made within
> thirty days.

(<u>Id.</u>)[14]  Blue Ridge did not file an application to restore the action to the Court's calendar.

       The Petition in the instant action, filed by Blue Ridge on January 8, 2010, is

virtually identical to the petition filed in <u>Blue Ridge I</u> and seeks the same relief.

---

as well as the petition filed in <u>Blue Ridge Invs., L.L.C. v. The Republic of Argentina</u>, No. 09
Civ. 2377(GEL) and Judge Lynch's dismissal order.

[13]  This sum reflected the original $133.2 million arbitral award plus interest through March 14,
2008.

[14]  So-called "30-day orders," such as that issued in <u>Blue Ridge I</u>, are "frequently used by district
courts when parties report that a case is, or is about to be, settled, but that some additional time is
needed to finalize their agreement.  Such orders dismiss or 'discontinue' the case, but permit
either party to have the case reinstated if settlement is not completed within a specified time,
usually 30 days."  <u>Muze, Inc. v. Digital On Demand, Inc.</u>, 356 F.3d 492, 492-93 (2d Cir. 2004).

Argentina argues that "[b]ecause no . . . application to restore [the action to the Court's calendar] was made [in <u>Blue Ridge I</u>], timely or otherwise, the dismissal without prejudice was converted into a dismissal with prejudice, according to the plain terms of the [Dismissal] Order.  Indeed, any contrary interpretation of the [Dismissal] Order would render its thirty-day restoration requirement a complete nullity."  (Resp. Br. 16)  In the alternative, Argentina argues that "[e]ven if the August 2009 Dismissal Order were not deemed a dismissal with prejudice, the Petition should still be barred pursuant to the 'double dismissal' rule imposed by Fed. R. Civ. P. 41(a)(1)(B)."  (<u>Id.</u> at 18)

"The starting point for analysis of the effect of [the Dismissal Order] is Fed. R. Civ. P. 41."  <u>Strategic Research Inst., Inc. v. Fabozzi</u>, 187 F.R.D. 507, 509 (S.D.N.Y. 1999).  The parties' respective interpretations of the Dismissal Order at the time it was entered are irrelevant, because "this matter is governed by the Federal Rules of Civil Procedure and the principles of former adjudication irrespective of plaintiff's subjective understanding. . . ."  <u>Id.</u>  Because the parties agree – and the Court finds – that the Dismissal Order constitutes a voluntary dismissal, it is clear that Rule 41(a) governs interpretation of the Dismissal Order.

Rule 41(a) provides:

**(a) Voluntary Dismissal.**

    **(1) <u>By the Plaintiff</u>.**

        **(A)** <u>Without a Court Order</u>.  Subject to Rules 23(e), 23.1(c), 23.2, and 66 and any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:

            **(i)** a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or

            **(ii)** a stipulation of dismissal signed by all parties who have appeared.

      **(B)** <u>Effect</u>.  Unless the notice or stipulation states otherwise, the dismissal is without prejudice.  But if the plaintiff previously dismissed any federal – or state – court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits.

    **(2) <u>By Court Order; Effect</u>.**  Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper.  If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication.  Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice.

Fed. R. Civ. P. 41(a).

      Although Argentina argues that Rule 41(a)(1)(B) applies, this provision addresses voluntary dismissals "[b]y the Plaintiff" through a notice of voluntary dismissal or a stipulation of dismissal.  Fed. R. Civ. P. 41(a)(1)(B) (emphasis added).  Rule 41(a)(2), on the other hand, applies to voluntary dismissals "by court order."  Fed. R. Civ. P. 41(a)(2).  There is no question that <u>Blue Ridge I</u> was dismissed by court order.  Accordingly, Rule 41(a)(2) governs the <u>res judicata</u> effect of the Dismissal Order.

      The Court must first consider whether the Dismissal Order provides that the case is dismissed with prejudice.  The Dismissal Order does not explicitly provide that the dismissal will be with prejudice if no party makes application to restore the case to the Court's calendar within thirty days.  Indeed, the phrase "with prejudice" does not appear in the Dismissal Order.  While the Dismissal Order may be fairly said to <u>imply</u> that a failure to make an application to restore the action would result in a dismissal with prejudice, the Dismissal Order does not state so explicitly.

      The Second Circuit has not addressed whether dismissal orders pursuant to Rule 41(a)(2) must explicitly state that failure to make an application to restore the action to the court's docket within the prescribed time period will result in a dismissal with prejudice.  Other

courts have concluded, however, that Rule 41(a)(2) governs the interpretation of 30-day and similar orders, and that an order issued pursuant to Rule 41(a)(2) is presumptively without prejudice, unless the order explicitly states otherwise.

For example, in <u>Choice Hotels Int'l, Inc. v. Goodwin & Boone</u>, 11 F.3d 469 (4th Cir. 1993), the Fourth Circuit considered a 30-day order similar to that issued here.  The order in that case provided that "entry of this Order is without prejudice to the right of a party to move for good cause within 30 days to reopen this action if settlement is not consummated."  <u>Id.</u> at 472. The Court noted that "the order obviously was not explicit. . . . At most, [the order] <u>implied</u> that failure to move to reopen its action within thirty days would make the dismissal prejudicial; nowhere did the dismissal order state <u>explicitly</u> that the dismissal would be prejudicial if its condition was not satisfied."  <u>Id.</u> at 472-73 (emphasis in original).

In concluding that the dismissal was without prejudice, the 11th Circuit reasoned as follows:

> We find it plain . . . for two reasons that . . . Rule [41(a)(2)] requires the district court's specification to be explicit and clear.  First, from the standpoint of the plaintiff, fairness demands it.  When a plaintiff fails to satisfy the district court's stated conditions and his action is dismissed with prejudice, the consequence is draconian – his claims, however meritorious, are forever barred from being heard on their merits.  The plaintiff is entitled to be made aware of this drastic consequence of failing to meet the court's conditions at the time the conditions are imposed, when he still has the opportunity to satisfy the conditions and avoid it. . . . Giving such a warning poses no significant burden on the district court – it must simply add to its order a sentence or a phrase stating explicitly and clearly that failure to meet its conditions will result in prejudicial dismissal.  Second, from the standpoint of the courts, sound judicial practice dictates that district courts make such an explicit and clear specification.  As courts, our purpose is "to render judgments in accordance with the substantial rights of the parties."  As a result, we have long adhered to "the sound public policy of deciding cases on their merits," and not "depriving . . . part[ies] of [their] 'fair day in court.'" . . . Requiring district courts to provide explicit and clear notice when they intend to dismiss the plaintiff's action with prejudice if he fails to satisfy its conditions promotes our strong preference that cases be decided on their merits.

Id. at 471-72 (citations omitted).

 Other courts have reached the same result on similar facts.[15] See, e.g.,

Plumberman, Inc. v. Urban Sys. Dev. Corp., 605 F.2d 161, 162 (5th Cir. 1979) (order provided

that if plaintiff "fails to file the amended complaint within ten (10) days, its action shall be

dismissed"; court noted that "[b]ecause the order did not otherwise specify, the dismissal is

without prejudice.  Consequently[,] it can have no res judicata effect"); Nedler v. Vaisberg, 427

F. Supp. 2d 563, 568-69 (E.D. Pa. 2006) (order provided that "[t]he Complaint is DISMISSED

without prejudice to Plaintiffs filing an amended complaint within twenty (20) days from the

date of this Order"; court noted that the "order made clear that the Complaint was dismissed

'without prejudice' (emphasis added).  Given this explicit language, this Court must not construe

the dismissal as one to which prejudice attaches. . . . [B]ecause the language of the state court

order did not advise plaintiffs . . . of the drastic consequences of failing to meet the court's

condition, res judicata does not apply.").

---

[15] Bernard Haldane Assoc., Inc. v. Harvard Prof'l Grp., 185 F.R.D. 180 (D.N.J. 1999), cited by Argentina, is not to the contrary.  In that case, the court considered the res judicata effect of a 60-day order which provided as follows:  "It appearing that it has been reported to the Court that the above action has been settled; It is, on this 17th day of April, 1997, ORDERED this action is hereby dismissed without costs and without prejudice to the right, upon good cause shown within 60 days, to reopen the action if the settlement is not consummated." Id. at 181.  Settlement discussions subsequently broke down – outside the 60-day window – and the plaintiff thereafter filed a complaint identical to the complaint in the prior action.  Defendants moved to dismiss on grounds of res judicata.  Id.  In ruling that the later complaint was barred by res judicata, the Court relied on a local rule rather than on Fed. R. Civ. P. 41(a)(2):  "[t]he similarity between the wording used in the Order and that included in [the local rule] leads the Court to conclude that [the prior judge] entered the Order in deliberate accordance with the authority granted to him by [the local rule] rather than[Fed. R. Civ. P.] 41(a)(2)." Id. at 182.  The court noted that "[t]he distinction between these two rules is significant.  The comment accompanying [the local rule] specifically states that the rule is intended to 'provide incentive to continue the settlement process diligently since the case may only be reopened within 60 days.'" Id. (emphasis in original).  There is no corresponding local rule in the Southern District of New York.

In providing that "[u]nless the order states otherwise, a dismissal under this paragraph (2) is without prejudice," Rule 41(a)(2) appears to demand clarity.  This Court also finds the reasoning of <u>Choice Hotels</u> persuasive.  Accordingly, Argentina's motion to dismiss on grounds of <u>res judicata</u> will be denied.

      **C.**    <u>**The Petition Is Not Time-Barred**</u>

      **1.**    <u>**Applicable Law**</u>

Argentina argues that Blue Ridge's petition is time-barred under New York's one-year statute of limitations for lawsuits seeking confirmation of an arbitration award.

Neither the ICSID Convention nor the legislation implementing the ICSID Convention contains a statute of limitations.  Failure to include a limitations period does not mean that no limitations period applies, however.  <u>See</u> <u>Muto v. CBS Corp.</u>, 668 F.3d 53, 56-57 (2d Cir. 2012).  Instead, "[i]t is the usual rule that when Congress has failed to provide a statute of limitations for a federal cause of action, a court 'borrows' or 'absorbs' the local time limitation most analogous to the case at hand."  <u>Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson</u>, 501 U.S. 350, 355 (1991) (citing <u>Wilson v. Garcia</u>, 471 U.S. 261, 266-67 (1985); <u>Auto. Workers v. Hoosier Cardinal Corp.</u>, 383 U.S. 696, 704 (1966); <u>Campbell v. Haverhill</u>, 155 U.S. 610, 617 (1895)); <u>see</u> <u>also</u> <u>Muto</u>, 668 F.3d at 57 ("When a federal statute does not establish a period of limitations for actions brought to enforce it, the district court's task is 'to "borrow" the most suitable statute or other rule of timeliness from some other source.'  In doing so, the courts 'have generally concluded that Congress intended that the courts apply the most closely analogous statute of limitations under state law.'") (citation omitted).  "This practice . . . has enjoyed sufficient longevity [such] that we may assume that, in enacting remedial legislation, Congress ordinarily 'intends by its silence that we borrow state law.'"  <u>Lampf</u>, 501 U.S. at 355

(quoting Agency Holding Corp. v. Malley-Duff & Assocs., Inc., 483 U.S. 143, 147 (1987)); see also Spira v. J.P. Morgan Chase & Co., No. 10-4590-cv, 2012 WL 615597, at *2 (2d Cir. 2012) ("This doctrine flows from the assumption that 'absent some sound reason to do otherwise, Congress would likely intend that the courts follow their previous practice of borrowing state provisions.'") (quoting DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 158 n.12 (1983)).

"If the state limitation would undermine the goals of the federal statute, however, the Supreme Court has set forth limited circumstances under which it might be preferable to borrow a federal limitations period." United Paperworkers Int'l Union and Its Local 340 v. Specialty Paperboard, Inc., 999 F.2d 51, 53 (2d Cir. 1993) (citing Lampf, 501 U.S. at 355-56). "[T]he test is as follows: 'we borrow federal rather than state limitations periods where (1) a federal rule of limitations clearly provides a closer analogy than state alternatives, and (2) the federal policies at stake and the practicalities of the litigation render the federal limitation a significantly more appropriate vehicle for interstitial lawmaking.'" Manning v. Utils. Mut. Ins. Co., Inc., 254 F.3d 387, 393-94 (2d Cir. 2001) (quoting Phelan v. Local 305 of United Ass'n of Journeyman, 973 F.2d 1050, 1058 (2d Cir. 1992)).

"On rare occasions, this Court has found it to be Congress' intent that no time limitation be imposed upon a federal cause of action." Lampf, 501 U.S. at 356 n.3 (citing Occidental Life Ins. Co. of Cal. V. EEOC, 432 U.S. 355, 367 (1977)). Although courts have found in limited circumstances that no statute of limitations applies to a federal cause of action, see S.E.C. v. Tandem Mgmt. Inc., No. 95 Civ. 8411(JGK), 2001 WL 1488218, at *5 (S.D.N.Y. Nov. 21, 2001) ("'[A]n action on behalf of the United States in its governmental capacity . . . is subject to no time limitation, in the absence of congressional enactment clearly imposing it.'") (quoting E.I. Dupont De Nemours & Co. v. Davis, 264 U.S. 456, 462 (1924)), the Supreme

Court has cautioned that "'[a] federal cause of action "brought at any distance of time" would be "utterly repugnant to the genius of our laws."'" <u>Agency Holding</u>, 483 U.S. at 156 (quoting <u>Wilson</u>, 471 U.S. at 271 (quoting <u>Adams v. Woods</u>, 2 Cranch 336, 341 (1805))).

"The first step in identifying a possible statute of limitations is identification of the proper state analog.  Next, the court must determine whether a conflict with federal policy is created by implementation of this limitations period.  In the absence of a conflict, the state law will apply and it will be 'simply besides the point' that an appropriate federal analog exists." <u>CSC Holdings, Inc. v. Kraut</u>, 169 F. Supp. 2d 115, 117 (E.D.N.Y. 2001) (quoting <u>North Star Steel Co. v. Thomas</u>, 515 U.S. 29 (1995)).

## 2.  Analysis

Argentina argues that the Court should borrow the one-year statute of limitations set forth in CPLR § 7510, which governs lawsuits seeking to confirm arbitration awards.[16] (Resp. Br. 21-22)  Because the Petition was filed on January 8, 2010, and seeks to confirm an Award issued on May 12, 2005, Argentina contends that the Petition is time-barred.  (Id. at 23-24)

Blue Ridge argues that no statute of limitations applies to actions seeking enforcement of ICSID awards.  (Petr. Br. 21)  In support of this argument, Blue Ridge notes that the Federal Arbitration Act ("FAA") – which provides statutes of limitations for confirming awards under various conventions – does not apply to enforcement of ICSID Convention awards. (Id.)  Blue Ridge argues that, by "enacting the ICSID Act against the backdrop of legislation that contained a statute of limitations for each existing category of arbitral awards for which

---

[16]  CPLR § 7510 provides:  "[t]he court shall confirm an [arbitration] award upon application of a party made within one year after its delivery to him, unless the award is vacated or modified upon a ground specified in section 7511."

confirmation could be sought in federal court, Congress deliberately chose to provide no limitations period at all for recognition and enforcement of ICSID awards."  (Id.)

    The Court rejects Blue Ridge's argument.  As discussed above, there is a strong presumption that where Congress fails to reference a statute of limitations for a federal cause of action, a court should borrow the most analogous state statute of limitation.  The Supreme Court has made clear that "the 'state-borrowing doctrine' may not be lightly abandoned."  Lampf, 501 U.S. at 356.  Blue Ridge has cited no case law in support of its argument that no limitations period applies to actions to confirm ICSID awards, nor has Blue Ridge pointed to anything in the legislative history concerning the implementing legislation suggesting that Congress intended that no limitations period would apply to actions seeking enforcement of ICSID awards.  The Court cannot find – based solely on the fact that Section 1605a provides that the FAA shall not apply to enforcement of ICSID awards – that Congress intended that no statute of limitations would apply to actions seeking enforcement of ICSID awards.  Accordingly, the Court must identify a proper state analog.

    Article 54 of the ICSID Convention states that

> [e]ach Contracting State shall recognize an award rendered pursuant to this Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State.  A Contracting State with a federal constitution may enforce such an award in or through its federal courts and may provide that such courts shall treat the award as if it were a final judgment of the courts of a constituent state. . . . Execution of the award shall be governed by the laws concerning the execution of judgments in force in the State in whose territories such execution is sought.

(ICSID Convention, Art. 54) (emphasis added).  "Congress has determined that in enforcing an ICSID award, a federal court is to treat it as it would a final judgment from a state court:  'The pecuniary obligations imposed by such an award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction in one

of the several states.'"  <u>Siag</u>, 2009 WL 1834562, at *1 (quoting 22 U.S.C. § 1650a(a)) (citing

<u>MINE</u>, 693 F.2d at 1103 n.14 ("ICSID arbitrations are to be enforced as judgments of sister

states.").

      Because ICSID awards are to be treated as final judgments of a state court –

rather than as arbitration awards – the most analogous state statute of limitations is that which

governs the enforcement of a final money judgment from the court of another state.  Under New

York law, awards containing "pecuniary obligations" – or money judgments – are enforced

pursuant to CPLR § 211(b).  CPLR § 211(b) requires that an action on a money judgment be

commenced within twenty years:

> **On a money judgment.**  A money judgment is presumed to be paid and satisfied
> after the expiration of twenty years from the time when the party recovering it
> was first entitled to enforce it.  This presumption is conclusive, except as against a
> person who within the twenty years acknowledges an indebtedness, or makes a
> payment, of all or part of the amount recovered by the judgment, or his heir or
> personal representative, or a person whom he otherwise represents. . . . The
> presumption created by this subdivision may be availed of under an allegation that
> the action was not commenced within the time limited.

CPLR § 211(b).

      New York courts have held that out-of-state money judgments are subject to the

20-year statute of limitations in CPLR § 211(b).  <u>See</u>, <u>e.g.</u>,  <u>Schoonheim v. Epstein</u>, 123 A.D.2d

549, 549 (1st Dep't 1986) ("[V]ested and final money judgments under Alabama law . . . must be

given full faith and credit in this state and may be enforced, in the manner of any other money

judgment, within a statutory period of 20 years.").

      Because the 20-year statute of limitations set forth in CPLR § 211(b) is applicable

here, Petitioner's action is not time-barred.[17]

---

[17]  It also appears that borrowing the one-year statute of limitations from CPLR § 7510 would
lead to absurd results in the context of an ICSID award.  The ICSID Convention provides for a

## **CONCLUSION**

For the reasons stated above, Respondent's motion to dismiss is denied.  The

Clerk of Court is directed to terminate the motion (Dkt. No. 18).

Dated: New York, New York
        September 30, 2012

SO ORDERED.

Paul G. Gardephe
United States District Judge

---

stay of enforcement of an award pending resolution of either party's annulment request.  (ICSID
Convention, Art. 52).  An annulment request must be filed within 120 days of an award.  (Id.)
Here, Argentina sought annulment and obtained an order staying enforcement for more than a
year after the award was issued. (Thomas Decl., Ex. L; Pet. ¶¶ 7-8, 12-13)